UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN COUNCIL OF LIFE
INSURERS, AMERICA'S HEALTH
INSURANCE PLANS, and LIFE
INSURANCE ASSOCIATION OF                    Case No. 1:07-cv-631
MICHIGAN,

              Plaintiffs,                   Hon. Richard Alan Enslen

       v.

LINDA A. WATTERS,
                                            **OPINION**
              Defendant.
                                    /

       This matter is before the Court on the competing summary judgment motions of Defendant

Linda A. Watters, Commissioner of the Michigan Office of Financial and Insurance Services

("OFIS"), and Plaintiffs American Council of Life Insurers, America's Health Insurance Plans, and

Life Insurance Association of Michigan.  Both motions will be reviewed simultaneously.  Upon

review of the extensive briefing and *amicus curiae* brief of AARP[1] in support of Defendant, the

Court determines that oral argument is unnecessary.  *See* W.D. Mich. LCivR. 7.2(d).  After review,

it is clear that summary judgment is appropriate for Defendant.

**I.  BACKGROUND**

       The parties have entered into a Stipulated Statement of Facts for the purpose of deciding the

present motions.  Defendant and OFIS are responsible for licensing, examining, and supervising

insurers and nonprofit health care corporations doing business in Michigan.  (Stip. Facts ¶ 1.)  OFIS'

---

[1]AARP filed a motion for leave to file an *amicus curiae* brief in support of Defendant's
Motion for Summary Judgment (Dkt. No. 20).  Leave to file is hereby granted.

authority includes the approval or disapproval of insurance policy forms and associated documents filed by insurers[2] and nonprofit health care corporations[3] doing business in Michigan.  (*Id.* at ¶ 2.)

On February 23, 2007, OFIS promulgated administrative Rules 500.2201–500.2202 and Rules 550.111–550.112 ("Rules"), which took effect on June 1, 2007.[4]  (*Id.* at ¶ 3.)  The Rules state generally that insurers and nonprofit health care corporations shall not issue, advertise, or deliver to any person in Michigan a policy, contract, rider, indorsement, certificate, or similar contract document that contains a "discretionary clause" and that any such clause is void and of no effect. (*Id.*)  The Rules extend to policies and related forms first issued on or after June 1, 2007, and to policies and related forms previously issued, if they are amended after the effective date.  (*Id.*)  The Rules define "discretionary clause" as follows:

> "Discretionary clause" is a provision in a form that purports to bind the claimant to or grant deference in subsequent proceedings to the insurer's decision, denial, or interpretation on terms, coverage, or eligibility for benefits including, but not limited to, a form provision that does any of the following:
>
> > (i) Provides that a policyholder or other claimant may not appeal a denial of a claim.
> >
> > (ii) Provides that the insurer's decision to deny policy coverage is binding upon a policyholder or other claimant.
> >
> > (iii) Provides that on appeal the insurer's decision-making power as to policy coverage is binding.

---

[2]Insurers are regulated under the Michigan Insurance Code, Mich. Comp. Laws § 500.100 *et seq*.

[3]Nonprofit health care corporations are regulated under the Nonprofit Health Care Corporation Reform Act, Mich. Comp. Laws § 550.1101 *et seq*.

[4]Mich. Admin. Code r. 500.2201–500.2202, r. 550.111–550.112.

(iv) Provides that the insurer's interpretation of the terms of a form is binding upon a policyholder or other claimant.

(v) Provides that on appeal the insurer's interpretation of the terms of a form is binding.

(vi) Provides that or gives rise to a standard of review on appeal that gives deference to the original claim decision.

(vii) Provides that or gives rise to a standard of review on appeal other than a *de novo* review.

Mich. Admin. Code r. 500.2201; *see also* Mich. Admin. Code r. 550.111 (applying to nonprofit health care corporations).

The parties agree that employee benefit plans established or maintained under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), commonly contain discretionary clauses. (Stip. Facts ¶ 5.) Thus, the Rules prohibit any entity covered by the Rules from issuing, advertising, or delivering to any person in Michigan, including an employee benefit plan subject to ERISA, an underwritten policy or certificate that includes a discretionary clause. (*Id.* at ¶ 6.)

Plaintiffs American Council of Life Insurers and America's Health Insurance Plans are national trade associations representing health plans, health insurers, and life insurers that write business in Michigan. (*Id.* at ¶ 7.) Both trade associations advocate public policies on behalf of their members in legislative, regulatory, and judicial forums at the state and federal levels. (*Id.*) Many of their members offer health care coverage, medical expense insurance, long-term care insurance, life insurance, disability income insurance, and other types of insurance products that are purchased by Michigan customers who sponsor employee benefit plans subject to ERISA. (*Id.* at ¶¶ 8–9.)

Plaintiff Life Insurance Association of Michigan represents life insurance companies licensed in Michigan who provide life insurance, long-term care insurance, disability income insurance, and other types of insurance products that are purchased by Michigan customers who sponsor employee benefit plans subject to ERISA.  (*Id.* at ¶ 10.)

All Plaintiffs would be affected if the Rules are upheld because some of their members have in the past used policy forms approved by OFIS that contained discretionary clauses and the members may wish to use such clauses in future policy forms submitted to OFIS.  (*Id.* at ¶ 11.) Similarly, many of the clients of Plaintiffs' members—for example, employer groups—have purchased OFIS approved policies containing discretionary clauses to fund their employee benefit plans, and many may wish to do so again in the future.  (*Id.*)

Plaintiffs filed suit against Defendant on July 2, 2007.  Plaintiffs seek declaratory relief insofar as the Rules attempt to govern the administration and enforcement of the terms of employee benefit plans subject to ERISA, and injunctive relief prohibiting Defendant and OFIS from attempting to enforce the Rules with respect to policies of insurance issued for the purpose of funding or otherwise providing benefits in connection with plans subject to ERISA.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 limits the materials the Court may consider in deciding a summary judgment motion to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).

4

If affidavits do not meet the requirements of Rule 56(e), they must be disregarded.  *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).

On the competing summary judgment motions, each party faces the same burden on their respective motion.  A movant must first specify the basis upon which summary judgment should be granted in the movant's favor and identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If, after adequate time for discovery on material matters, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 323.

In assessing evidence, credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions.  *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).  When analyzing a movant's summary judgment motion, evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in the non-movant's favor.  *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255).

## III.  ANALYSIS

### A.  Standing

Before proceeding to the merits, the Court must address Defendant's challenge to Plaintiffs' standing to sue.  The burden of establishing standing is on the party invoking federal jurisdiction, which in this case is Plaintiffs.  *COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004).  A party invoking federal jurisdiction must satisfy the "irreducible

constitutional minimum of standing" articulated in the Supreme Court's landmark decision *Lujan v. Defenders of Wildlife*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. 555, 560–61 (1992) (internal citations omitted).

Since Plaintiffs are organizations, the Court must determine whether organizational standing exists. An organization has standing in two circumstances: (1) to vindicate its own rights, or (2) on behalf of its members asserting their rights. *Am. Fed'n of Gov't Employees v. Clinton*, 180 F.3d 727, 732–33 (6th Cir. 1999). In this case, Plaintiffs assert standing on behalf of their members. When an organization is suing to vindicate the rights of its members, three requirements must be met: (1) its members must otherwise have standing to sue in their own right; (2) the interests the organization seeks to protect must be germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Defendant does not dispute Plaintiffs meet the second and third requirements, but does contend Plaintiffs' members do not possess standing to sue in their own right.

Defendant argues Plaintiffs have failed to demonstrate an injury in fact to their members. It is stipulated that: "All of the Plaintiffs would be affected if the rules are upheld because some of

6

their members have in the past used policy forms approved by OFIS that had Discretionary Clauses and the members may wish to use such Clauses in future policy forms submitted to OFIS." (Stip. Facts ¶ 11.) Defendant chides this stipulation for being neither "concrete and particularized" nor "actual or imminent" as required by *Lujan*.

In *Lujan*, wildlife conservation and other environmental organizations challenged a regulation interpreting the Endangered Species Act, which was issued by the Secretary of the Interior, requiring federal agencies to consult with the Secretary on actions taken only in the United States or on the high seas. 504 U.S. at 558–59. The organizations alleged the federal regulation improperly exempted action taken in foreign countries and would undoubtably lead to the extinction of certain species. *Id.* at 563. The organizations submitted affidavits of two members who previously traveled abroad to observe endangered species and intended to do so again at an unspecified time in the future. *Id.* The Court held that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564.

Whereas in *Lujan* the regulation targeted federal agencies and not organizations or their members, *see id.* at 558–59, in this case the Rules specifically target Plaintiffs' members and all other entities that issue insurance policies in Michigan. As the Supreme Court explained:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. *If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.* When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.

*Id.* at 561–62 (emphasis added). The Rules are unequivocally directed at Plaintiffs' members and have significant effects on Plaintiffs' future operations and existing policies. Not only do the Rules affect policies issued by Plaintiffs after the effective date, which has already passed, the Rules will affect existing policies as soon as they are "revised in any way." *See* Mich. Admin. Code r. 500.2202(b)–(c), r. 550.112(b)–(c). Nevertheless, Defendant has continually and vigorously challenged Plaintiffs' standing so the Court must review applicable caselaw.

After review, the Court concludes Plaintiffs have adequately averred an injury in fact. The injury is "concrete and particularized" because the Rules prohibit insurers from marketing products that contain discretionary clauses to sponsors of employee benefit plans. This clearly interferes with Plaintiffs' members' primary business because discretionary clauses are commonly used by entities like Plaintiffs' members, (*see* Stip. Facts ¶ 5), and nothing indicates Plaintiffs' members would not have continued to include discretionary clauses in insurance policies absent the Rules. *Cf. Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977) (conferring standing on association representing Washington apple farmers challenging North Carolina statute prohibiting the marketing of apples shipped in containers bearing a non-federal grade).[5]

This "concrete and particularized" injury is also "actual" and "imminent." The injury is "actual" because the prohibition on new policies took effect on June 1, 2007, so Plaintiffs can no longer offer products that contain discretionary clauses. Mich. Admin. Code r. 500.2202, r. 550.112.

---

[5]Beginning with the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101 (1989), the Court has witnessed a strong trend in the insurance industry to adopt policy language providing the plan administrator with discretion in making plan decisions. (*See also* Stip. Facts ¶ 5 (stating that employee benefit plans commonly contain discretionary clauses).) Thus, state regulations like the Rules will likely have a significant impact on practices in the insurance industry.

The injury is "imminent" because whenever a policy containing a discretionary clause is "revised in any way," *see* r. 500.2202(b), r. 550.112(b), the discretionary clause must be removed. *Cf. Fieger v. Ferry*, 471 F.3d 637, 643–44 (6th Cir. 2006) (conferring standing on attorney alleging certain Michigan Supreme Court justices had a bias against him after finding that there was a significant chance that he would appear before them based on his litigation practice and, thus, the injury was imminent); *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (conferring standing on organization challenging state rule governing mistakenly filed ballots in elections based on the injury being real and imminent).

Accordingly, because the Court finds that Plaintiffs are directly affected by the Rules and will suffer future harm if the Rules are enforced, Plaintiffs have sufficiently alleged an injury in fact. Defendant does not dispute Plaintiffs have met the second and third prongs of the "irreducible constitutional minimum of standing." Upon review, it is clear that Plaintiffs have satisfied all standing requirements because there is a causal connection between the injury and the conduct complained of and it is likely that the injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 560–61.

**B. Preemption**

Plaintiffs argue the Rules are preempted on two bases. First, Plaintiffs argue that under ordinary preemption, the Rules are preempted because they are at war with Congress' intent in enacting ERISA and the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Brunch*,[6]

---

[6]In *Firestone*, the Supreme Court held that when reviewing ERISA claims, "the *de novo* standard of review applies" unless "a benefit plan gives discretion to an administrator or fiduciary" in which case the reviewing court applies the arbitrary and capricious standard. 489 U.S. at 111–15; *see also Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 164 (6th Cir. 2007).

which interpreted ERISA.  Regarding this argument, the Court summarily finds that it lacks merit because the Rules clearly do not interfere with any of Congress' objectives in passing ERISA and the authority cited by Plaintiffs does not compel a contrary conclusion.  Moreover, all of the preemption arguments raised by Plaintiffs are properly analyzed under the framework of *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002)*, and *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), discussed *infra*.

Plaintiffs' next argument alleges the Rules are preempted by ERISA, 29 U.S.C. § 1144(a),[7] and are not saved from preemption by ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A).[8] Defendant argues *Rush Prudential* is controlling and that it directly rejects Plaintiffs' arguments. Plaintiffs acknowledge *Rush Prudential* but discredit the import of its holding based on the Supreme Court's later decision in *Kentucky Ass'n*.  For purposes of analysis, the Court will first examine *Rush Prudential* and then *Kentucky Ass'n*.

### 1. *Rush Prudential*

In *Rush Prudential*, the Supreme Court analyzed an Illinois statute that imposed requirements on health maintenance organizations ("HMOs") after a benefit denial.  536 U.S. at 384.  The Illinois statute was composed of two pertinent components: (1) binding independent review, and (2) a *de novo* standard of review for the independent reviewer.[9] *Id.*  From the outset, because the Rules only

---

[7]Section 1144(a) states, in pertinent part, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

[8]Section 1144(b)(2)(A) states, in pertinent part, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

[9]The Court discerns no significant difference between a law requiring *de novo* review, as in *Rush Prudential*, and a law prohibiting discretionary clauses, as in the Rules.  Any difference

require the second component of the Illinois statute—a *de novo* standard of review—it should be obvious that *Rush Prudential* directly speaks to the issue in this case and that the Rules are much less intrusive to the rights of insurers than the Illinois statute, which was upheld.

Similar to Plaintiffs' arguments, the HMO argued the Illinois statute was preempted because it impermissibly deprived HMOs of a deferential standard of review in benefit determinations and conflicted with ERISA by supplementing or supplanting its exclusive civil enforcement scheme. *See id.* at 378. Both of these arguments were rejected by the *Rush Prudential* Court. *See infra*. For the same reasons, this Court rejects Plaintiffs' arguments.

### i.  Deferential Review

Plaintiffs argue *Firestone Tire* authorizes insurers to design ERISA plans that grant discretion to a plan fiduciary and that state regulations cannot infringe this right of insurers. This argument was squarely rejected in *Rush Prudential*.

> [I]n determining whether state procedural requirements deprive plan administrators of any right to a uniform standard of review, it is worth recalling that ERISA itself provides nothing about the standard. It simply requires plans to afford a beneficiary some mechanism for internal review of a benefit denial, 29 U.S.C. § 1133(2), and provides a right to a subsequent judicial forum for a claim to recover benefits, § 1132(a)(1)(B). Whatever the standards for reviewing benefit denials may be, they cannot conflict with anything in the text of the statute, which we have read to require a uniform judicial regime of categories of relief and standards of primary conduct, not a uniformly lenient regime of reviewing benefit determinations.

*Rush Prudential*, 536 U.S. at 384–85 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). The *Rush Prudential* Court further explained that not "only is there no ERISA provision directly providing a lenient standard for judicial review of benefit denials, but there is no requirement necessarily entailing such an effect even indirectly." *Id.* at 385. Thus, Plaintiffs fail to demonstrate

lies merely in semantics.

they are *entitled* to a deferential standard of review and that Defendant does not have the power to prohibit discretionary clauses in insurance policies.

### ii.  ERISA's Civil Enforcement Scheme

Plaintiffs' next argument centers on whether the Rules interfere with Congress' intention to make ERISA's civil enforcement remedies exclusive.  As aforementioned, individual benefit plans *may* be drafted with discretionary clauses, *see Firestone Tire*, 489 U.S. at 115; however, *Rush Prudential* held that a statute mandating *de novo* review does not upset ERISA's exclusive civil enforcement scheme.  *Rush Prudential*, 536 U.S. at 385–86.  Statutes requiring *de novo* review do "not implicate ERISA's enforcement scheme at all, and [are] no different from the types of substantive state regulation of insurance contracts we have in the past permitted to survive preemption, such as mandated-benefit statutes and statutes prohibiting the denial of claims solely on the ground of untimeliness."  *Id.* at 386 (citing *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985)).

As explained by the *Rush Prudential* Court, state regulations requiring *de novo* review are "garden variety" and arguments relying on *Firestone Tire* to conclude otherwise are misplaced.

> While the statute designed to [compel *de novo* review] undeniably eliminates whatever may have remained of a plan sponsor's option to minimize scrutiny of benefit denials, this effect of eliminating an insurer's autonomy to guarantee terms congenial to its own interests is the stuff of garden variety insurance regulation through the imposition of standard policy terms.

*Id.* at 387.  "It is therefore hard to imagine a reservation of state power to regulate insurance that would not be meant to cover restrictions of the insurer's advantage in this kind of way."  *Id.*  Thus, because the effect of requiring *de novo* review and prohibiting discretionary clauses is indistinguishable, Plaintiffs' argument is manifestly at odds with *Rush Prudential* since the Court

12

explicitly held that the statute does not constitute a new cause of action or a new form of ultimate relief.

> But this case addresses a state regulatory scheme that provides no new cause of action under state law and authorizes no new form of ultimate relief. While independent review under § 4-10 [of the Illinois statute] may well settle the fate of a benefit claim under a particular contract, the state statute does not enlarge the claim beyond the benefits available in any action brought under § 1132(a). And although the reviewer's determination would presumably replace that of the HMO as to what is "medically necessary" under this contract, the relief ultimately available would still be what ERISA authorizes in a suit for benefits under § 1132(a). This case therefore does not involve the sort of additional claim or remedy exemplified in *Pilot Life*, *Russell*,[10] and *Igersoll-Rand*,[11] but instead bears a resemblance to the claims-procedure rule that we sustained in *UNUM Life Ins. Co. of Am. v. Ward*, holding that a state law barring enforcement of a policy's time limitation on submitting claims did not conflict with § 1132(a), even though the state "rule of decision," could mean the difference between success and failure for a beneficiary.

*Id.* at 379–80 (citations and footnotes omitted).

Just as in the Illinois statute, the Rules provide no new cause of action and no new form of ultimate relief. The Rules do not enlarge a benefit claim beyond the remedies available in an action brought under § 1132(a). Under the Rules, a participant or beneficiary of an insured ERISA plan who challenges a claim denial is limited to bringing an action under ERISA's civil enforcement provisions. Further, new forms of relief, such as punitive damages which were found preempted in *Pilot Life*, are similarly lacking from the Rules. Like the challenger in *Rush Prudential*, Plaintiffs "overstat[e] the rule expressed in *Pilot Life*." *Id.* at 378. Thus, the Court finds that the Rules are not preempted by ERISA.

---

[10]*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

[11]*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990).

2. *Kentucky Ass'n*

Based solely on *Rush Prudential*, the Court would be compelled to find that ERISA does not preempt the Rules. *Rush Prudential*, however, relied on the McCarran-Ferguson factors which were replaced in *Kentucky Ass'n* by a new test. Plaintiffs argue the *Kentucky Ass'n* Court called into question the holding of *Rush Prudential* and other cases that relied on McCarran-Ferguson.

> Today we make a clean break from the McCarran-Ferguson factors and hold that for a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. *See Pilot Life*, *supra*, at 50; *UNUM*, *supra*, at 368; *Rush Prudential*, *supra*, at 366. Second, as explained above, the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

*Kentucky Ass'n*, 538 U.S. at 342. Based on this enigmatic language, the Court must determine whether *Rush Prudential* remains good law.

i. *Kentucky Ass'n's* "Clean Break"

The three McCarran-Ferguson factors, which were long used by courts in determining whether certain practices constituted "the business of insurance," are as follows: "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." *Id.* at 333 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982)). Aside from the *Kentucky Ass'n* Court's reference to making a "clean break" from the McCarran-Ferguson factors, nothing in the decision indicates that the Court's holding in *Rush Prudential* is not precedential. On the contrary, the decision affirmatively cites *Rush Prudential* as well as various other cases which relied on the McCarran-Ferguson factors. *See id.* at 338–39.

14

As apparent from the new test articulated in *Kentucky Ass'n*, the standards have been unmistakably relaxed for deciding when a state law "regulates insurance," which means *Rush Prudential* remains controlling. *See id.* at 339 n.3. The first prong of the *Kentucky Ass'n* test, which replaced the third McCarran-Ferguson factor, requires a state law to be specifically directed toward an entity engaged in insurance. *See id.* at 333, 342. Whereas the first McCarran-Ferguson factor required a state law to have the effect of actually transferring or spreading a policyholder's risk, the second prong of the *Kentucky Ass'n* test merely requires the state law to "substantially affect" the risk pooling arrangement. *See id.* The *Kentucky Ass'n* Court wholly did away with McCarran-Ferguson's second requirement that a state law be "integral" to the insurer-insured relationship. *See id.* Accordingly, it should not be surprising that this new test gives more power to states to regulate insurance.

In formulating the new test, the Supreme Court hoped to clarify guidance to lower federal courts and not overturn previous cases relying on McCarran-Ferguson.[12] "We believe that our use of the McCarran-Ferguson case law in the ERISA context has misdirected attention, failed to provide clear guidance to lower federal courts, and, as this case demonstrates, added little to the relevant

---

[12]For example, the Court stated that the McCarran-Ferguson factors raise more questions than they answer and provide numerous opportunities for divergent outcomes, such as the following:

> May a state law satisfy *any* two of the three McCarran-Ferguson factors and still fall under the saving clause? Just one? What happens if two of three factors are satisfied, but not "securely satisfied" or "clearly satisfied," as they were in *UNUM* and *Rush Prudential*? Further confusion arises from the question whether the *state law itself* or the *conduct regulated by that law* is the proper subject to which one applies the McCarran-Ferguson factors.

*Id.* at 340.

analysis." *Id.* at 339–40.  Thus, the Court finds that *Rush Prudential* remains precedent and as such, directly controls this case.  Moreover, as the Court will demonstrate, the Rules pass muster under the more-lenient *Kentucky Ass'n* test.

ii.  The First Prong of <em>Kentucky Ass'n</em>

To demonstrate that a state law is specifically directed toward entities engaged in insurance, *Kentucky Ass'n* made it clear that "ERISA's savings clause does not require that a state law regulate 'insurance companies' or even 'the business of insurance' to be saved from preemption; it need only be a 'law which . . . regulates insurance.'" *Id.* at 341.  This straightforward analysis compels the conclusion that "when insurers are regulated with respect to their insurance practices, the state law survives ERISA." *Rush Prudential*, 536 U.S. at 366.  The Supreme Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption" under ERISA's savings clause. *See UNUM*, 526 U.S. at 375.  For example, in *UNUM*, the Court held that a law regulates insurance if it "controls the terms of the insurance relationship" and is "applicable only to insurance contracts." *Id.* at 368.  The *UNUM* Court reasoned that states have the power to alter the terms of an insurance contract and that a contrary holding would read the savings clause out of ERISA. *Id.* at 376.

In this case, there can be no serious dispute that the Rules are directed toward entities engaged in insurance.  "[A]n insurer" is regulated by r. 500.2201 and r. 500.2202, while r. 550.111 and r. 550.112 regulate nonprofit health care corporations providing certificates issued under Act 350.  The Rules directly regulate the terms "an insurer" can insert into policies by prohibiting discretionary clauses. *Cf. Rush Prudential*, 536 U.S. at 373; *UNUM*, 526 U.S. at 374.  Moreover, the Rules affect the very nature of the insurance being provided because they regulate the insurer's

16

ultimate ability to deny benefits. "The relationship between insurer and insured, *the type of policy which could be issued*, its reliability, its interpretation, and enforcement—these were the core of the 'business of insurance.'" *Metro. Life*, 471 U.S. at 744 (emphasis added). As in *Metro. Life*, "the focus [of the statute is] on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the 'business of insurance.'" *Id.* Prohibiting a term in insurance policies is a mere condition on the insurer's right to issue a policy. *Kentucky Ass'n*, 538 U.S. at 337. Thus, the Rules easily satisfy the first prong of *Kentucky Ass'n*.

### iii. The Second Prong of *Kentucky Ass'n*

The second prong of the *Kentucky Ass'n* test "requires only that the state law substantially *affect* the risk pooling arrangement between the insurer and the insured; it does not require that the state law actually spread risk." *Id.* at 339 n.3. The Supreme Court noted that even the notice prejudice rule at issue in *UNUM* substantially affected the risk pooling arrangement because it "governs whether or not an insurance company must cover claims submitted late, which dictates to the insurance company the conditions under which it must pay for the risk that it has assumed." *Id.*

In this case, the Rules constitute legitimate "conditions on the right to engage in the business of insurance." *Id.* at 338. Just as in *UNUM*, the Rules will result in insurers paying over more money in claims and incurring more of the risk they have assumed. *See Metro. Life*, 471 U.S. at 473. The Rules "substantially *affect* the risk pooling arrangement between the insurer and insured" because they "alter the scope of permissible bargains between insurers and insureds" by prescribing a term to which they may not agree. *Kentucky Ass'n*, 538 U.S. at 338–39 & n.3. This is manifest in the purpose of the Rules, which is to prohibit discretionary clauses because they "unreasonably

17

reduce[] the risk purported to be assumed in the general coverage of the policy." Mich. Admin.

Code r. 500.2202(a). Thus, the Court finds the Rules also meet the second prong of *Kentucky Ass'n*

and, therefore, the Rules constitute "law[s] . . . which regulate insurance" under § 1144(b)(2)(A) of

ERISA.

### C. Motion for Leave to Amend

A final matter before the Court is Plaintiffs' recently filed Motion for Leave to File Second

Amended Complaint. Defendants have responded in opposition and Plaintiffs have filed a motion

for leave to file a reply, which the Court hereby grants. Plaintiffs assert:

> [T]he plaintiff associations learned that some of their insurance company members had, on or about June 1, 2007, received letters from OFIS advising them that certain policies that the companies had identified as containing discretionary clauses and as in use before the effective date of the rules were disapproved pursuant to MCL 500.2236(5), which authorizes OFIS to disapprove policies that contain provisions that "deceptively affect the risk purported to be assumed in the general coverage of the policy."

(Pls.' Br. in Support of Mot. to Amend 3.) Plaintiffs seek to amend their First Amended Complaint

to set forth facts supporting the above allegations and to expand their request for injunctive relief.


The Court denies Plaintiffs' Motion for two primary reasons. First, the Court finds Plaintiffs'

underlying preemption arguments unmeritorious, discussed *supra*, which makes Plaintiffs' Proposed

Second Amended Complaint futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sinay v. Lamson*

*& Sessions Co.*, 948 F.2d 1037, 1041–42 (6th Cir. 1991) (concluding "an amendment may not be

allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion).

Second, Plaintiffs' Motion places unwarranted burdens on the Court and is prejudicial to Defendant.

*See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Based on the matters at stake in this

18

case and the manner in which the competing summary judgment motions came before the Court, the Court views the "expeditious termination of litigation" as particularly important to both parties as well as the Michigan insurance industry.  *See id.*

## IV.  CONCLUSION

As detailed above, the Rules promulgated by Defendant and OFIS prohibiting discretionary clauses in insurance policies sold in Michigan comply with the two-prong test set forth in *Kentucky Ass'n*.  Specifically, the Rules constitute "law[s] . . . which regulate insurance" under § 1144(b)(2)(A) of ERISA, because they are specifically directed toward entities engaged in insurance and substantially affect the risk pooling arrangement between the insurer and the insured.  As shown in *Rush Prudential*, the Rules are saved from preemption as laws regulating insurance under ERISA's savings clause.  Accordingly, because there are no genuine issues of material fact, Defendant's summary judgment motion will be granted and Plaintiffs' summary judgment motion will be denied.  A Judgment shall issue consistent with this Opinion.

|  |  |
|---|---|
|  | /s/ Richard Alan Enslen |
| DATED in Kalamazoo, MI: | RICHARD ALAN ENSLEN |
| February 29, 2008 | SENIOR UNITED STATES DISTRICT JUDGE |